AO 106 (Rev 04/10) Application for a Search Warrant



# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Samsung Mobile Telephone Model Number:<br>GT-I9300 Serial Number: R31C50LX5YH Located at<br>WFO FBI 601 4th Street NW, Washington DC | )<br>)<br>)<br>)<br>)<br>) | Case  1 13-mj-578<br>Assigned To   Magistrate Judge Deborah A. Robinson<br>Assign Date  7/15/2013<br>Description  Search and Seizure Warrant |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*

SEE ATTACHMENT A INCORPORATED HEREIN AND MADE PART HEREOF

located in the _____ District of _____ Columbia _____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B INCORPORATED HEREIN AND MADE PART HEREOF

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21, United States Code,<br>Section 952 | "Importation of a Controlled Substance." |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

David J. Carrigan, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____

_____
*Judge's signature*

City and state:  Washington, DC

Magistrate Judge, Deborah A. Robinson
*Printed name and title*

## ATTACHMENT A – ITEM TO BE SEARCHED

A Samsung mobile telephone, Model GT-I9300, Serial Number R31C50LX5YH, located in the Evidence Control Room at the FBI office in Washington, District of Columbia (DC), address 601 4th Street, NW, Washington, DC.

This warrant authorizes the forensic examination of the **Mobile Telephone** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B – ITEMS TO BE SEIZED

5.      All information, in whatever form and by whatever means it was created or stored, including names, addresses, calendars, contact information, data, phone numbers, phone call records, electronic mail messages, text messages, images, voice memos, voice messages, photographs, videos, internet sites, internet access, documents or other information, contained in the internal, external or removable memory or memories, on the **Mobile Telephone** described in Attachment A that relate to violations of Title 18 United States Code (U.S.C.), Section 1956; Title 21 U.S.C., Sections 952 and 959; Title 21 U.S.C., Sections 841 and 846; Title 21 U.S.C., Section 331(a); and involve SHEIKH WASEEM and TAHIR SAEED, including:

    a.      the planning and execution of criminal activity;

    b.      lists of customers and related identifying information for other co-defendants and co-conspirators, both known and unknown;

    c.      names of other customers and distributors of drugs, prices, and amounts of specific transactions;

    d.      any information recording WASEEM's and TAHIR's travel; and

    e.      all bank records, checks, credit card bills, account information, and other financial account information and records that relating to drug distribution or proceeds of drug distribution.

6.      Evidence of user attribution showing who used or owned the device, such as phone books, saved usernames and passwords, and documents.

7.      Records and things evidencing the use of the Internet to communicate with servers, including:

    a.      records of Internet Protocol addresses used and records of Internet activity; and

      b.     records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

8.     Records which evidence membership with any website or chat room or organizations related to drug distribution, including without limitation, e-mail, correspondence and envelopes, passwords, credit card bills or receipts, and URL addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.



## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

IN THE MATTER OF THE SEARCH OF )
)
SAMSUNG MOBILE TELEPHONE, )
MODEL NUMBER: GT-I9300, )
SERIAL NUMBER: R31C50LX5YH, LOCATED )
AT WASHINGTON FIELD OFFICE, )
FEDERAL BUREAU OF INVESTIGATION, )
601 4TH STREET NW, WASHINGTON, DC )

Case. 1 13-mj-578
Assigned To  Magistrate Judge Deborah A  Robinson
Assign Date  7/15/2013
Description  Search and Seizure Warrant

## COMMON AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

### THE AFFIANT

I, David J. Carrigan, Special Agent with the Federal Bureau of Investigation (FBI), Washington Field Office (WFO), Washington D.C., (hereinafter the "affiant") being duly sworn, depose and state the following:

This is a common affidavit seeking court authorization under Federal Rule of Criminal Procedure 41 for a finding that there is probable cause to search and retrieve information, electronic and digital data on the following electronic devices:

1.   HP LAPTOP COMPUTER
     MODEL NUMBER: ELITE BOOK 8440W
     SERIAL NUMBER: USH114004S

2.   WESTERN DIGITAL HARD DRIVE
     SERIAL NUMBER: WXH1A20P5326

3.   NIKON SLR CAMERA
     MODEL NUMBER: D90
     SERIAL NUMBER: 8197733

4.   SONY HANDCAM VIDEO CAMERA
     MODEL NUMBER: DCR-SR2200
     SERIAL NUMBER: 804318

5.    NOKIA MOBILE TELEPHONE
      MODEL NUMBER: 5130C-2
      IMEI: 354233/03/533388

6.    SAMSUNG MOBILE TELEPHONE
      MODEL NUMBER: GT-I9300
      SERIAL NUMBER: R31C50LX5YH

These items are currently in the possession of the Federal Bureau of Investigation at the Washington Field Office, 601 4th Street, N.W., Washington, D.C.  They were lawfully seized by law enforcement officials in the United Kingdom from two defendants who were arrested in the United Kingdom, indicted here in the U.S. District Court for the District of Columbia (United States v. Ul Haq and Saeed, Case No. 1:12-cr-240), and extradited to the United States for prosecution.  The items were transferred to the custody of the FBI pursuant to the extradition treaty.

## INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application for a search warrant for the authorization for the examination and extraction of electronically stored information contained in a computer laptop.  The electronic device to be searched is described further in the following paragraphs and Attachment A.

2.    I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7) and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.  As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

3.    I am a Special Agent with the Federal Bureau of Investigation ("FBI"), assigned to the Washington Field Office, 601 4th Street NW, Washington, DC.  I have been a Special

Agent since March 18, 2008, and have been assigned to work various matters, to include, White Collar Crime. During my law enforcement career, I have participated in numerous investigations, including investigations involving health care fraud, wire fraud, fraud against the federal government, and narcotics violations. As a duly sworn Special Agent of the FBI, I completed a twenty-one week training program given by the FBI, which includes instruction in the investigation of various criminal offenses, including theft, theft-schemes, fraud, and related acts. I have completed training relating to health care fraud and money laundering, which were sponsored by the FBI and private insurers. I have learned that those who commit criminal offenses, like those enumerated above, use computers, the internet, and electronic devices to facilitate that criminal conduct.

       a.     The Internet is a worldwide network of computer systems operated by governmental entities, corporations, and universities. The term "computer" as used herein is defined in 18 U.S.C. § 1030(e)(1), and includes an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device. In order to access the Internet, an individual computer user must subscribe to an access provider, which operates a host computer system with direct access to the Internet. The World Wide Web ("www") is a functionality of the Internet which allows users of the Internet to share information;

       b.     With a computer connected to the Internet, an individual computer user can make electronic contact with millions of computers around the world. This connection can be made by any number of means, including modem, local area network, wireless and numerous other methods;

3

c.      E-mail is a popular form of transmitting messages and/or files in an electronic environment between computer users.  When an individual computer user sends e-mail, it is initiated at the user's computer, transmitted to the subscriber's mail server, and then transmitted to its final destination.  A server is a computer that is attached to a dedicated network and serves many users.  An e-mail server may allow users to post and read messages and to communicate via electronic means.

d.      Online drug suppliers commonly use computers to send e-mails, to communicate with customers, and to arrange for the illegal purchase and/or sale of pharmaceutical narcotics.  Computers are commonly used to store information about the illegal operation, such as photographs, calendars, addresses, customer lists, advertisements and financial records.

e.      Online drug suppliers commonly maintain telephone numbers, addresses and directions in telephones, computer databases, books and papers.

## BASIS FOR FACTS CONTAINED IN THE AFFIDAVIT

4.      Throughout this investigation, law enforcement officers and agents have worked together to collect and record information about the illegal activities of the two indicted defendants, as well as other individuals still under investigation.  The facts and information contained in this affidavit are based upon my personal knowledge, information obtained from state and federal law enforcement officers, and information provided by a cooperating witness.

5.      This affidavit contains information necessary to support probable cause for this application.  It is not intended to include each and every fact and matter observed by me, other law enforcement officers, or known to the government.  Not every fact known to this investigation or by the government is set forth in this affidavit.  Additionally, unless otherwise

4

noted, wherever in this affidavit I assert that a statement was made by an individual, that statement is described in substance, and in part, and is not intended to be a verbatim recitation of the entire statement.

## IDENTIFICATION OF THE TARGET DEVICES TO BE EXAMINED

6.      This affidavit is respectfully submitted in support of a search warrant for an HP Laptop computer, Model Elite Book 8440w, Serial Number USH114004S; Samsung mobile telephone, Model Number GT-I9300; Nokia mobile telephone, Model Number 5130c-2, IMEI 354233/03/533388/9; Sony Handycam video camera, Model Number DCR-SR2200; Serial Number 804318; Nikon SLR camera, Model Number D90, Serial Number 8197733; Western Digital external hard drive, Model Number My Passport, Serial Number WXH1A20P5326, (hereinafter referred to as the "**Target Devices**").  On October 19, 2012, the **Target Devices** were lawfully seized by United Kingdom law enforcement authorities during the arrest of Sheikh Waseem Ul Haq (hereinafter referred to as "Ul Haq") and Tahir Saeed (hereinafter referred to as "Saeed"), in London, United Kingdom.  Pursuant to the United States's request made under the Treaty with the United Kingdom on Mutual Legal Assistance on Criminal Matters, the **Target Devices** were seized on October 12, 2012, in London, England, when United Kingdom law enforcement officials executed arrest warrants for Ul Haq and Saeed issued by the District Court for the District of Columbia.  Subsequent extradition applications to the United Kingdom resulted in the transfer of the **Target Devices** to the FBI.

7.      The applied-for search warrant would authorize the forensic examination of the **Target Devices** for the purpose of identifying electronically stored data particularly described in Attachment B.

5

## RELEVANT STATUTES

8.      Pursuant to Title 18, United States Code ("U.S.C."). Section 1956(a)(2)(A), (a)(2)(B)(i), and (h), it is a violation of federal law for a person to conspire to ". . . transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States . . . with the intent to promote the carrying on of specified unlawful activity" or "knowing that the . . . funds involved . . . represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership , or the control of the proceeds of specified unlawful activity."

9.      Pursuant to Title 21 U.S.C., Sections 952 and 960(a)(1), it is a violation of federal law for a person to "knowingly and intentionally import a controlled substance" into the customs territory of the United States from any place outside thereof, or to import into the United States from any place outside thereof, controlled substances, absent certain limited exceptions.

10.     Pursuant to Title 21 U.S.C., Sections 841 and 846, it is a violation of federal law for a person to knowingly or intentionally "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

11.     Pursuant to Title 21 U.S.C., Section 331(a), it is a violation of federal law for a person to introduce into interstate commerce misbranded drugs, which include drugs without adequate directions for use, and drugs that are mislabeled.

## FACTS ESTABLISHING PROBABLE CAUSE

12.     On October 10, 2012, a criminal complaint for one count of importation of controlled substances for Waseem Ul Haq Sheikh (the same individual as indicted under the

6

name Sheikh Waseem Ul Haq) was issued under 12-mj-0810 in the United States District Court for the District of Columbia. A corresponding arrest warrant was also issued. A complaint and subsequent arrest warrant was also issued for Ul Haq's business partner, Tahir Saeed (12-mj-0809). On October 19, 2012, Ul Haq and Saeed were arrested in the United Kingdom on provisional arrest warrants. Several items, including a laptop and the two cellphones detailed above, were seized during their arrest.

13.     On November 6, 2012, Sheikh Waseem Ul Haq and Tahir Saeed were indicted on 48 counts relating to the activities of importation and distribution of controlled and misbranded drugs, and money laundering (Cr. No. 12-240 (BAH). On April 18, 2013, Tahir Saeed was extradited to the United States and is currently being held in the District of Columbia jail. On May 17, 2013, Sheikh Waseem Ul Haq was extradited to the United States and is currently being held in the District of Columbia jail.

14.     The **Target Devices are** currently in storage in the Evidence Control Room at the FBI office in Washington, District of Columbia (hereinafter referred to as the "DC"), a location within the District of Columbia, located at 601 4th Street, NW, Washington, DC. In my training and experience, I know that the **Target Devices** have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as the **Target Devices** were when they first came into the possession of the FBI.

15.     For the reasons set forth below, I respectfully submit there is probable cause to believe that evidence of money laundering, distribution of controlled substances, and introduction into interstate commerce of misbranded drugs, will be located on the **Target Devices**.

16.     On November 28, 2012, under London Metropolitan Police authority, your affiant

7

reviewed the electronic data extracted from the laptop and mobile phones seized during Ul Haq and Saeed's arrest. The viewing was accomplished at the invitation of authorities in the United Kingdom. During the investigation of Ul Haq and Saeed, I participated in an undercover capacity, and while viewing these electronic devices in the United Kingdom, I observed my own undercover contact information saved on one of the **Mobile Telephones** and on the **Laptop** seized. I also observed the Western Union receipt that I e-mailed to Ul Haq, which was saved on the **Laptop**. I also observed on one of the seized **Mobile Telephones** that the main e-mail account linked to the mobile phone was alex.sheikh1@gmail.com. This is one of the e-mail addresses that I used to order drugs from the defendants' businesses. Consequently, I know that the target electronic devices contain evidence of criminal conduct pertinent to the prosecution in the pending indictment, and that the devices were used as instrumentalities in furtherance of a crime. Moreover, the possession of these devices by the targets when arrested in the United Kingdom establishes their identity as those defendants named in the pending indictment.

17.     Therefore, while the FBI might already have all necessary authority to examine the **Target Devices**, law enforcement officials in the United States seek this additional warrant out of an abundance of caution to be certain that an examination of the **Target Devices** will comply with the Fourth Amendment and other applicable laws.

18.     Based on my training and experience, examining data stored on the **Target Devices** can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

## PROBABLE CAUSE IN THE INDICTMENT AND EXTRADITION

19.  The extradition affidavits presented to officials in the United Kingdom articulated some of the following facts, which also summarize evidence presented to the grand jury resulting

in the return of an indictment, Cr. 12-240(BAH). These facts are as follows:

20. From at least December 2005, Ul Haq operated Waseem Enterprises. Along with his business partner, Tahir Saeed ("Saeed"), they have operated Harry's Enterprises since 2008. Both companies sell wholesale quantities of pharmaceutical drugs, including controlled substances such as methylphenidate (a Schedule II drug, sold under the trade name Ritalin), anabolic steroids (Schedule III drugs), and Vicodin, Valium, and Xanax (all Schedule IV drugs), and misbranded and unapproved drugs. The companies sell to customers in the United States and elsewhere through the Internet. The companies advertise on various business-to-business websites and sell wholesale quantities of drugs to customers without requiring the purchaser to hold wholesale or retail licenses of any kind, or provide prescriptions. As such, when the drugs enter the United States they are misbranded drugs because they do not contain adequate directions for use. The methods used by the defendants are designed to circumvent the regulatory system established in the United States and overseen by the United States Food and Drug Administration ("FDA") to control the manufacture, packaging, and distribution of pharmaceutical drugs to American consumers.

21. In order to limit scrutiny of themselves and their associates, the defendants directed Internet customers to use Western Union or MoneyGram to wire transfer money to pay for drugs to the names of other individuals in Pakistan whose identities were being used to accept money. In 2007 and 2008, some of those Western Union payments were directed to Saeed.

22. The defendants packaged drug orders to evade detection from regulatory and law enforcement authorities in the United States and elsewhere. At times drugs were wrapped in carbon paper or black plastic trash bags. The defendants made it clear to their customers that they were responsible if packages were seized, and told them their money would not be refunded

9

should their packages be seized.

23.   The defendants initially mailed packages from Pakistan.  In early 2012, packages from Pakistan were having problems getting delivered in the United States, and drug orders were shipped to United States customers from the United Kingdom.  Some steady customers were directed to use alternate addresses to receive packages, and some United States customers were told that because packages from Pakistan were getting seized in the United States, orders could be shipped from Europe or Singapore.

24.   Law enforcement officials preserved computer "screen shots" of the websites of Waseem Enterprises (www.waseement.com) and Harry's Enterprises (www.harrysent.com), which the defendants used to advertise, sell, and ship controlled substances and misbranded and unapproved pharmaceuticals to Internet customers.  Both websites offered worldwide shipping to Internet customers, each website cross-referenced the other site, and both claimed to be importers and exporters of pharmaceuticals from Pakistan.  The sites offered a wide variety of pharmaceuticals for sale, which, in the United States, were prescription-required drugs, and included both controlled substances and non-controlled substances.  The defendants used various e-mail accounts to correspond with Internet customers and co-conspirators in the course of receiving, filling, and shipping drug orders.   These included pharmex@cyber.net.pk, info@waseement.com, sales@waseement.com, sheikhw@hotmail.com, swuhaq@cyber.net.pk, sheikh@ufone.blackberry.com, swaseem@yahoo.com, alex.sheikh1@gmail.com, harrys1@cyber.net.pk, info@harrysent.com and sales@harrysent.com.

25.   Some of these e-mail addresses and websites contained stored electronic communications which FBI law enforcement agents obtained pursuant to a court-ordered search warrants.  One e-mail contained an attachment which was a Pakistan partnership deed for

Harry's Enterprises, dated July 1, 2008.  This document between Ul Haq and Saeed indicates on that date they became equal partners in the business, and that Ul Haq had been the Chief Operation Officer of Harry's Enterprises since 2003.  The document also states that the purpose of the business was importing, exporting, and trading pharmaceutical and consumer products.

26.     Beginning in 2010, the FBI established an undercover operation in which undercover agents, including myself, purchased controlled substances and other prescription drugs from Waseem Enterprises and Harry's Enterprises.  During this operation, both businesses sold large quantities of drugs to FBI agents.  Between October 2010 and September 2012, seven undercover buys were made from Waseem Enterprises, and three were made from Harry's Enterprises.  The undercover orders proceeded in similar fashion:  the undercover agent had an e-mail conversation with individuals at the two businesses about the availability of drugs and prices, after which an order was placed by the undercover agent.  In all but one instance, after the order was placed, the undercover agent was provided with a name to whom to send money via Western Union or MoneyGram to pay for the purchase.   For one order, instead of paying by Western Union, I used a bank transfer to pay for the drugs, and was provided with an account name at the Emirates NBD Bank in Dubai, United Arab Emirates, to accept the bank transfer. Some of the e-mail addresses listed above in paragraph 24 were used to communicate with me and other FBI agents in the course of the undercover operation.

27. After money was wire-transferred to pay for each drug order, I was provided via e-mail a tracking number or numbers for the mail parcels being sent with the drugs that were ordered.

28.  Once the drugs were received, chemical analyses were performed by the forensic chemists from the FDA's Forensic Chemistry Center or the United States Drug Enforcement

Administration ("DEA") to identify the active ingredient(s) in each drug.

29. In the course of the undercover operation, the following drugs were purchased and received: Ritalin and a generic form of Ritalin that also contained methylphenidate, codeine (both are Schedule II controlled substances); Schedule III anabolic steroids, including Stanozolol (known as Winstrol Depot), Methenolone (known as Primobolan Depot), Nandrolene Decanoate (known as Deca Durabolin), Testosterone Proprionate/ Testosterone Phenylpropriate/Testosterone Isocaproate/Testosterone Decanoate (known as Sustanon), Testosterone enanthate (known as Testofort), Methandrostenolone (known as Danabol), and as noted above, ordered but did not receive Oxymetholone (known as Anadrol); Schedule IV drugs, including alprazolam (sold as Xanax), diazepam (sold as Valium), lorazepam (sold as Ativan), and clonazepam (sold as Klonapin); and several non-controlled, but prescription-required drugs, specifically Zovirax (containing acyclovir), Nolvadex (containing tamoxifen), Arimidex (containing anastrozole), Cytomel (containing liothyronine sodium), Penegra (a drug containing sildenafil citrate, the active ingredient in Viagra), and clenbuterol (a bronchodilator drug only approved in the United States for equine use).

30. The defendants conducted business with other United States customers in a similar manner as business was conducted in the course of the FBI undercover operation.

31. There is probable cause to establish that Ul Haq and Saeed used computers and other electronic devices to facilitate the commission of the offenses for which they were indicted, and to establish that a search of the **Target Devices** will link the identity of the two arrested in United Kingdom with the identity of those charged in the pending indictment as well as confirm that these devices were used as instrumentalities of the charged offenses, and will provide otherwise relevant evidence in the prosecution of the pending indictment.

12

**TECHNICAL TERMS**

32.  Based on my training and experience, I use the following technical terms to convey the following meanings:

a.   Laptop Computer: A Laptop means any electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

b.   Mobile telephone: A mobile telephone (or wireless telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

c.   The Internet is a global network which allows for the sharing of data across computers attached to the network.  Individual users typically access the Internet through a local Internet Service Provider ("ISP") through a modem or other connection device, such as a

cable or Digital Subscriber Line ("DSL").  When accessing the Internet, the ISP will assign each user an Internet Protocol ("IP") address, a unique number used by a computer to access the Internet. IP addresses can be dynamic, meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet.  IP addresses can also be static, whereby the user's ISP assigns the computer a unique IP address, and that same number is used by the user every time the computer accesses the Internet.

        d.    Communication via the Internet can take place through many different mediums like accessing a website or sending and receiving electronic mail, also known and referred to herein as "e-mail."  E-mail is an electronic form of communication which can contain letter-type correspondence and graphic images.  E-mail is similar to conventional paper type mail in that it is addressed from one individual to another.  E-mail messages usually contain a header that gives the screen name, the identity of the Internet access provider, and the return address on the Internet of the individual who originated the message or graphic.  The Internet also allows individuals to share files, documents, and/or images, often through e-mail or by downloading images from a website or another individual's computer, as described below.  Using a computer connected to a network connected to the Internet, one can transmit and receive files between computers located in different states or countries.   Files can be stored internally in a computer on its "hard drive," and/or externally on "floppy" disks of several sizes and capacities, and/or externally on CDs and/or DVDs of several size and capacities and on other removable media storage devices.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

33. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the

Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

34. There is probable cause to believe that things that were once stored on the **Target Devices** may still be stored there, because United Kingdom law enforcement officials showed this affiant that relevant and evidentiary data are indeed stored on these devices, and for at least the following reasons:

      a.    Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

      b.    Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space, that is, in space on the storage medium that is not currently being used by an active file, for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

      c.    Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.

15

Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

        d.      Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

    35. <u>Forensic evidence</u>. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Target Devices** because:

        a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

        b.      Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

        c.      A person with appropriate familiarity with how an electronic device works

may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

        d.      The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

        e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

36. <u>Nature of examination.</u>  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Target Devices** consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **Target Devices** to human inspection in order to determine whether it is evidence described by the warrant.

37. <u>Manner of execution.</u>  Because this warrant seeks only permission to examine Devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto any premises.  Consequently, I submit there is cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

38.  I believe that a search of the **Target Devices** will show communications between Ul Haq, Saeed, and uncharged or unindicted co-conspirators and may identify other co-conspirators and victims.   It will also establish that the persons arrested in United Kingdom are the persons referred to in the indictment now pending trial, Cr. 12-240(BAH).

39.  Based upon these facts, there is probable cause to believe that there are fruits and evidence of offenses stored therein, and that these items were instrumentalities of criminal conduct involving violations of 18 U.S.C. Section 1956; 21 U.S.C. Sections 841, 846, 952 and 960; and 21 U.S.C. Section 331(a).

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

David J. Carrigan
Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me
this _____ day of July, 2013.

United States Magistrate Judge

18